| | | |
|---|---|---|
| MICHAEL I. BROWN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03661 |
| | ) | |
| CHEMONICS INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR ENTRY OF PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ...................................................................1

II. SUMMARY OF ISSUES PRESENTED...........................................2

III. THE COURT SHOULD ENTER THE STIPULATED PROTECTIVE ORDER
ATTACHED HERETO AS EXHIBIT A ...........................................4

    A. Defendant Has Attempted to Secure an Agreed Protective Order
Throughout Discovery. ...........................................................4

    B. Good Cause Exists for Entry of Defendant's Proposed Protective Order..............6

IV. PLAINTIFF SEEKS DISCOVERY THAT IS BEYOND THE SCOPE
PERMITTED BY FED. R. CIV. P. 26 AND HIS MOTION TO COMPEL
SHOULD BE DENIED. ...................................................................9

    A. Company-Wide Discovery is Not Warranted in This Case ................................10

    B. Plaintiff's Motion to Compel Should Be Denied ................................13

        1. Definition of "Defendant" or "You" (ECF No. 15 at p. 4) and
Request for Production Nos. 1-9 (ECF No. 15 at pp. 5-9) .....................13

        2. Request for Production No. 12 (ECF No. 15 at pp. 9-10) .......................14

        3. Request for Production No. 15 (ECF No. 15 at p. 10) ...........................15

        4. Request for Production No. 16 (ECF No. 15 at pp. 10-11) .....................16

        5. Request for Production No. 21 (ECF No. 15 at p. 11), Request for
Production No. 24 (ECF No. 15 at pp. 11-12) and Request for
Production No. 25 (ECF No. 15 at p. 12) ................................17

        6. Request for Production No. 27 (ECF No. 15 at p. 13) ...........................18

        7. Request for Production No. 30 (ECF No. 15 at p. 13) ...........................18

        8. Request for Production No. 31 (ECF No. 15 at pp. 13-14) .....................18

        9. Interrogatory No. 1 (ECF No. 15 at pp. 14-15) and Interrogatory
No. 2 (ECF No. 15 at pp. 15-16)...........................................19

        10. Interrogatory No. 3 (ECF No. 15 at pp. 16-17)........................20

        11. Interrogatory No. 4 (ECF No. 15 at pp. 17-19)........................21

        12. Interrogatory No. 5 (ECF No. 15 at p. 19).............................22

        13. Interrogatory No. 6 (ECF No. 15 at pp. 19-20)........................23

        14. Interrogatory No. 7 (ECF No. 15 at p. 20).............................23

V. CONCLUSION ...........................................................................23

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR ENTRY OF PROTECTIVE ORDER

Chemonics International, Inc. ("Chemonics" or "Defendant"), by counsel, submits this Opposition to Plaintiff's Motion to Compel and further moves for entry of the proposed Protective Order attached hereto as Exhibit A to govern the treatment of the confidential information and documents to be produced in discovery in this matter.

## I.    FACTUAL BACKGROUND

Chemonics is an international development organization.  It has approximately 5,000 employees and its primary customer is the USAID.  Chemonics has historically divided its business into 11 or 12 regional business units, such as Latin America and the Caribbean, Asia, and East and Southern Africa.  Each business unit is headed by a Senior Vice President ("SVP").

Chemonics hired Plaintiff Michael Brown in 2014, when he was 62 years old.  At Chemonics, Mr. Brown was an Environment and Natural Resources Practice Director, a practice area that was housed within the Latin American and Caribbean business unit.  In 2019, Chemonics faced a significant budget shortfall.  However, Chemonics did not conduct a company-wide RIF program or layoffs.  Rather, each region was assigned its own budget and Chemonics SVPs considered the business opportunities in their respective regions and determined how to allocate the budgeted funds for their respective regions.  Anne Spahr, the SVP for the Latin America and Caribbean business unit, saw limited opportunities in Mr. Brown's area at that time.  Ms. Spahr decided that the LAC region's budget could no longer support a Director level position for Environment and Natural Resources. Accordingly, Ms. Spahr made the decision to eliminate Mr. Brown's position.

Mr. Brown filed a Charge of Discrimination.  *See* Exhibit B.  In his Charge, he alleged that Chemonics fired him because of his age, relying on an alleged comment made at a February 7, 2020 meeting by an individual who was not his supervisor.  Specifically, Plaintiff

alleges that Anna Slother, Executive Vice President, said, "people working in Practice areas would not be released despite budget constraints the company had experienced." Ms. Slother denies making the comment. And Mr. Brown was not even in attendance at this meeting, allegedly participating by telephone from the Chicago O'Hare Airport.

In his Charge, Mr. Brown did not allege a pattern or practice of age discrimination or, more importantly, allege any facts to support such a claim. Yet, Mr. Brown's single plaintiff lawsuit alleges, without factual support, that Chemonics "has engaged in a pattern and practice of discriminating against older workers, and either terminating their employment, or pushing them to resign their employment, or retire, so they can be replaced by younger workers." Compl. ¶11. However, it does not identify any specific "pattern" nor "practice," nor alleged policy that might have a disparate impact on those over 40.[1] *See* Compl., *passim.*

## II.   SUMMARY OF ISSUES PRESENTED

Although Plaintiff has taken issue with the vast majority of objections and responses offered by Defendant, the current discovery dispute centers on three issues:

(1) **Protective Order:** The Parties appeared to have agreement to enter into a protective order to govern the confidentiality of materials produced in this litigation. Although the parties' initially differed on multiple aspects of the proposed order, the disagreement now appears to be limited to a singular substantive issue. Defendant proposed an "umbrella" protective order

---

[1] Plaintiff did not even identify any specific examples of the alleged "older workers" referenced in the Complaint, and initially refused to provide a response to Defendant's direct request for such information until he had the opportunity to conduct discovery. Exhibit C (June 8, 2021 Supplemental Answer to Interrogatory No. 20). After the meet and confer process concluded, Plaintiff provided unverified supplemental Answers to Interrogatories identifying seven individuals alleged referenced as these "older workers" in the Complaint. *Id.* Notably, Defendant provided termination documents for six of the seven individuals, confirming their dates of separation, reason for separation, business unit or region and supervisor at the time of termination. ECF No. 15-3 at p. 9, Request No. 13. Defendant further confirmed that it would provide the personnel files for those individuals following the entry of the protective order.

format to permit Defendant to designate confidential information prior to its production, to expedite and facilitate discovery while ensuring the necessary protections. Plaintiff's counsel, however, has taken the position that he will not agree to any protective order that does not include a provision requiring Chemonics to first show Plaintiff's counsel any document it wants to identify as confidential, and if he does not agree with the designation, require Chemonics to file a motion with the Court to support the designation. As set forth in further detail below, Defendant submits that the "umbrella" format is preferable, more expedient and efficient and will minimize the number of discovery motions before the Court.

In the course of conferring on this issue, Chemonics offered several versions for a protective order. The last one it offered is the standard form protective order used by the U.S. District Court for the District of Maryland. Mr. Brown's response to this offer was simply, "I appreciate the Maryland Court local rules, but we are in DC." *See* Exhibit F, *supra*. As Plaintiff has offered no substantive objection to this template approved by another federal court, Defendant respectfully submits that the Court should enter the template protective order in this case, as modified to account for this Court's Local Rules regarding motions to seal, at Exhibit A.

(2) **Company-Wide Discovery:** In his Motion to Compel, Mr. Brown seeks broad, company-wide discovery based on his conclusory allegation of a "pattern" of discrimination. For example: he asks Chemonics (a) to identify the ages and job titles of all employees since 2015; (b) to identify all employees by age and job title hired, and whose employment ended for any reason, since 2015; and (c) to produce "all documents and communications that refer to, relate to or memorialize Defendant's efforts since January 1, 2008 through March 20, 2020, to hire and/or retain workers who are referred to in such efforts as "old" or "older" or who were over 60 years old." Defendant has taken the well-supported position that discovery should be limited to the relevant supervisor and decisional unit – in this case, the LAC region under the

direction of the decision maker, Ms. Spahr, and that position is the subject of several of the individual discovery disputes.

(3) **Unnecessary Resolution of Objections:** Mr. Brown is dissatisfied with Chemonics' objections, without regard to the information provided. As Chemonics indicated in the multiple hours spent conferring on these requests, several objections are offered to make Defendant's interpretation of the request and the scope of the search and response clear, and that no documents or information are being withheld based on the objections. Yet Plaintiff inexplicably seeks a ruling on those objections knowing it will not result in the production of further documents or information. Defendant submits these are not discovery "disputes" requiring Court intervention and it is unclear what Plaintiff seeks to "compel" in these instances. *See, e.g.,* ECF No. 15 at 20 (Plaintiff asserts Defendant's objections to Interrogatory No. 7 (requesting identification of any admissions or declaration against interest) are inappropriate where the objections are offered to provide clarity on Defendant's position and reservation to supplement as discovery progresses, but Defendant expressly states that it "is not withholding information based on these objections" and "is not aware of any admission or declaration against interest at this time.").

Defendant addresses each of these issues, along with Plaintiff's arguments regarding each individual request, in further detail below.

## III.  THE COURT SHOULD ENTER THE STIPULATED PROTECTIVE ORDER ATTACHED HERETO AS EXHIBIT A

### A.  Defendant Has Attempted to Secure an Agreed Protective Order Throughout Discovery.

Despite Plaintiff's representations, Defendant has not failed to take efforts to secure a protective order in this case. Rather, Chemonics made several attempts to agree to a protective order and move forward with the production of confidential documents.

As part of the parties' Local Rule 16.3 obligations, Chemonics provided a joint planning report to Plaintiff on February 16, 2021, that included the proposed representation that "The Parties also agree that a Joint Protective Order to govern the confidentiality of documents and information is likely appropriate in this case and will submit a draft Order for the Court's approval as necessary." During the telephonic planning conference and in his revisions to the draft planning report, Plaintiff refused to agree to this representation or the necessity of a protective order in this case at that point.

Defendant served its initial discovery responses on March 15, 2021, indicating that Defendant would provide certain documents following the entry of a stipulated protective order to govern the confidentiality of the documents. Defendant provided to Plaintiff a standard, proposed protective order on March 16, 2021 to facilitate that production. The parties exchanged three additional drafts of the proposed protective order before Defendant's proposed use of the template order from the United States District Court for the District of Maryland on May 27, 2021, to provide a path forward to entry of the order and production of the documents. Plaintiff's response to this offer was simply, "I appreciate the Maryland Court local rules, but we are in DC." No substantive objection was offered as to why the template order, from another federal court governed almost entirely by the same procedural rules, was objectionable.

Shortly thereafter, the parties commenced the informal process required by Judge Brown Jackson's scheduling order to address discovery motions. As part of that process, Chemonics presented this issue and the proposed protective orders to Judge Brown Jackson via email on June 8, 2021. *See* Exhibit F (June 8, 2021 Defendant's Submission to Judge Brown Jackson). After Judge Brown Jackson reviewed the parties' submissions, she referred these discovery matters to Magistrate Judge Merriweather. *See* June 8, 2021 Minute Order Referring Case.

Following that referral, Magistrate Judge Meriweather directed the parties' file a joint status report. The report included Defendant's position with respect to the proposed protective orders, expressly proposing that the Court approve the use of a template protective order from the United States District Court for the District of Maryland. ECF No. 14 ("Defendant presented the protective order issue to Judge Brown Jackson prior to the referral of this matter for discovery purposes to Judge Meriweather and submits that the parties should use the template order included as an Appendix in the Local Rules for the United States District Court for the District of Maryland, modified only to account for this Court's Local Rules regarding sealed documents.")

It was Defendant's understanding that a telephone conference regarding the issues outlined in the report would proceed any discovery motions to inform the parties' positions on the issues, including the proposed protective order, and that briefs would not be filed until the Court approved the request to file discovery motions and any proposed briefing schedule. However, Plaintiff simply filed his motion to compel the next day and, after the fact, the Court approved the briefing schedule. Consequently, Plaintiff's representations that Defendant has failed to make any effort to secure the entry of a protective order necessary to produce the confidential documents are disingenuous and misleading. Now, as detailed further below, Defendant respectfully submits, pursuant to Fed. R. Civ. P. 26(c), that the Court enter the proposed protective order attached hereto as Exhibit A.

**B.**      <u>**Good Cause Exists for Entry of Defendant's Proposed Protective Order.**</u>

Defendant seeks the entry of the proposed "umbrella" protective order attached hereto as Exhibit A, pursuant to Fed. R. Civ. P. 26(c). Protective orders may include "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). The rule

"confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Klayman v. Jud. Watch, Inc*., 247 F.R.D. 19, 22 (D.D.C. 2007).

"Courts use protective orders not only to resolve individual discovery disputes, but also to 'expedite the flow of discovery' in cases involving a large amount of sensitive information." *United States v. Johnson,* 314 F. Supp. 3d 248, 252 (D.D.C. 2018) (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1123 (3d Cir. 1986)). "One species of protective order is the 'umbrella' protective order, under which parties agree that certain information is protected without a court finding that good cause exists for protection." *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.,* No. CV 16-54 (EGS/DAR), 2019 WL 8755131, at \*4–5 (D.D.C. Nov. 25, 2019). Such orders can "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication." *Id.* An umbrella order merely "postpones the necessary showing of 'good cause' required for entry of a protective order until the confidential designation is challenged." *Id.* (citing C*hicago Tribune Co. v. Bridgestone/Firestone, Inc*., 263 F.3d 1304, 1307 (11th Cir. 2001)). The party seeking the protective order still bears the burden of making the showing of good cause contemplated by Rule 26(c). *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C.1998).

Consistent with this rationale, Defendant has sought an umbrella protective order to facilitate discovery in an efficient and expedited manner, rather than having the parties engage in a series of pre-designation disputes that would further delay "production" and the conduct of additional discovery. At this stage, the parties have exchanged written discovery responses and certain responsive documents. One issue that is confirmed by Plaintiff's discovery responses to date is that he is doing potentially similar and/or competitive proposal work for his own business, or as a consultant.

Mr. Brown is president of his own international development consulting firm, Satya International, and continues in that role today. Exhibit D (M. Brown LinkedIn profile identifying him as President and CEO of Satya, last accessed July 21, 2021); Exhibit E (Answers to Interrogatories of M. Brown at p. 10). Since his termination, he is also operating as a consultant to "fulfill short term evaluation and project proposal needs." Exh. E at 10; *see also* Exh. E at p. 13 (listing project proposal consultant work). This type of work overlaps significantly with the proposal work he performed while at Chemonics. *Id*. at p. 18-21 (listing proposal work performed while at Chemonics). Given the short-term character of this consulting work, the nature and scope of Plaintiff's work is unpredictable and therefore Defendant will not be able to identify potential competitive concerns or injury with certainty. Moreover, although Chemonics knows Mr. Brown continues to be active in the small international development community through his company Satya and consulting, he has refused to provide substantive information about the company or his consulting work in discovery. *See* Exh. E at p. 18 (Answer to Interrogatory No. 5) and p. 21 (Response to Request for Production No. 25). Mr. Brown's refusal to provide fulsome information further precludes Chemonics from making a particularized assessment of all competitive risks presented by Mr. Brown possessing Chemonics' non-public business and financial information without restriction.

Chemonics is not attempting to prevent Plaintiff from obtaining the necessary discovery in this case, but as Chemonics noted in its e-mail to his lawyer, "[o]ur real interest is ensuring that sensitive business documents are not used or disclosed outside the litigation. Particularly given Mr. Brown's work for at least one competitor, not to mention the competitive nature of the government contracts marketplace, we think this is reasonable."

As evidenced by Plaintiff's Motion, several of the discovery requests seek detailed financial information, including but not limited to line-item budget details for, at least, one entire

business unit at Chemonics. The budget materials include detailed information regarding the allocation of the business' resources, as well as research regarding forward market projections and similar non-public business planning and strategy information. Moreover, as confirmed by Plaintiff's own answers to interrogatories, any communications regarding or examples of Plaintiff's work product while at Chemonics will likely include non-public proposal work on behalf of Chemonics.

As set forth in the proposed order at Exhibit A, the entry of an umbrella protective order will not alleviate Defendant's need to show good cause for the designation when challenged and therefore, does not shift any burden to Plaintiff. However, Defendant submits that good cause has been shown for the entry of this form of protective order to minimize further discovery disputes and motions, expedite the remaining discovery, and still provide the parties all of the required protections. Therefore, Defendant respectfully requests that the Court enter the proposed protective order attached hereto as Exhibit A.

## IV. **PLAINTIFF SEEKS DISCOVERY THAT IS BEYOND THE SCOPE PERMITTED BY FED. R. CIV. P. 26 AND HIS MOTION TO COMPEL SHOULD BE DENIED.**

Federal Rule of Civil Procedure 26 allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Breiterman v. United States Capitol Police*, 324 F.R.D. 24, 27 (D.D.C. 2018). "[C]onsiderations of both relevance and proportionality ... govern the scope of discovery" allowed under Rule 26. *Id.* (citing *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016)).

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Id.* "However, the court must limit the extent of discovery that is, *inter alia*, unreasonably cumulative or duplicative, outside the permitted scope of Rule 26(b)(1), or obtainable from

another source that is more convenient, less burdensome, or less expensive." *Id.* (citing Fed. R. Civ. P. 26(b)(2)(C)). "Where a relevance objection has been raised, the moving party seeking to compel discovery 'must demonstrate that the information sought to be compelled is discoverable.'" *Id.* (citing *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30 (D.D.C. 2007); *Felder v. Wash. Metro. Area Transit Auth.*, 153 F.Supp.3d 221, 224 (D.D.C. 2015)).

"Discovery, while broad, is not limitless, and the Court will not authorize a fishing expedition into the disciplinary actions taken against other [] employees." *Id.* at 31 (denying in part motion to compel production of disciplinary and personnel records of other employees in Title VII action where such discipline could not yield comparators similarly situated under Title VII framework) (citation omitted); *see also Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) ("Courts need not tolerate fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests." (internal quotation marks omitted).

### A.    Company-Wide Discovery is Not Warranted in This Case

Although Defendant addresses each of the Requests identified in Plaintiff's Motion below, Defendant believes that proper limitation of discovery to Plaintiff's business unit – the LAC, as the division overseen by the decision maker with respect to his termination (Ms. Spahr) and the division whose budgetary restraints required Plaintiff's termination – will resolve several of the outstanding issues in the pending Motion[2] and provide a path for the parties to avoid similar disputes going forward.

---

[2] Plaintiff's efforts to seek company-wide discovery pervade the discovery in this case and are of particular relevance the following issues presented in his motion, for example: (1) the definition of "Chemonics" to include all employees or agents of the company (ECF No. 15 at 3-4); (2) Request for Production Nos. 15, 21, 24, and 27; and (3) Interrogatory Nos. 1 and 2.

Here, Defendant has made clear in its Answers to Interrogatories, verified by Ms. Spahr, that Ms. Spahr, as SVP of LAC, made the decision to eliminate Mr. Brown's position based on the limited budget allocated to the LAC for 2020. *See* ECF No. 15-4 at pp. 5-7, 14. Consequently, Defendant objected, with legal citations, to any scope of discovery beyond that business unit and decision maker. *See e.g.,* ECF No. 15-4 at pp. 2-4 ("*Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010) (citing *Owens v. Sprint/United Mgmt*. Co., 221 F.R.D. 649, 653 (D. Kan. 2004))[3] ("In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit.") Plaintiff has not shown, or offered anything other than a conclusory allegation, that the requested information beyond those individuals supervised by Ms. Spahr meets the requirement of being "particularly cogent" to the matter and has not set forth a "more particularized need for, and the likely relevance of, broader information.")

In employment actions, discovery is commonly and appropriately restricted to the relevant decision makers and/or employing units. *See, e.g., Nuskey v. Lambright,* 251 F.R.D. 3, 11 (D.D.C. 2008) (limiting scope of requests for agency-wide information "to incidents involving employees and managers within [plaintiff's employing unit of] the International Business Development Division."); *Parker v. Ciena Corp.*, No. CV GLR-14-4036, 2017 WL 2364291, at *2 (D. Md. May 30, 2017) (denying discovery outside of plaintiff's unit when measured against the "yardstick of proportionality."); *Jones v. Con-Way Freight, Inc.*, No. 3:12-CV-724-GCM, 2013 WL 4212751, at *2 (W.D.N.C. Aug. 15, 2013) (limiting discovery to the "hub" where plaintiff reported); *King v. Chipotle Servs., LLC*, No. 3:17-CV-00804, 2017 WL

---

[3] Defendant notes that the cited cases were decided prior to the amendment of Fed. R. Civ. P. 26, implementing the proportionality standard to guide the scope of discovery and submits that under the current, revised standard the scope of discoverable information is even more tailored to the specifics of a Plaintiff's claim.

3193655, at *2 (S.D.W. Va. July 27, 2017) (collecting cases) ("Generally, in cases of wrongful discharge, the scope of discovery regarding other similar terminations is limited to the personnel and employing units that made the decision to terminate the plaintiff.").

Similarly, Plaintiff's definition of Chemonics, to the extent Plaintiff purports to require Defendant to conduct company-wide searches for documents and information based on that definition, is likewise over broad as such search would not comport with the relevance, burden and proportionality limitations on discovery provided in Fed. R. Civ. P. 26. Limitation of information and document searches to relevant custodians is proper. *See, e.g., CHS Ins. Servs., LLC v. Franklin,* No. 17-CV-553-JHP-JFJ, 2018 WL 2323800, at *2 (N.D. Okla. Jan. 9, 2018) (sustaining in part proportionality objection and finding discovery request to company-plaintiff "is properly limited to the [company] employees most likely to have had the relevant communications. Plaintiff need not conduct further inquiry beyond the four [company] custodians already identified … the Court finds the burden of interviewing and/or searching the records of all [company] employees for potentially responsive communications outweighs the 'likely benefit' of any search beyond those employees already identified as most likely to have relevant information." (citing Fed. R. Civ. P. 26(b)(1)).[4]

The arguments advanced in Plaintiff's Motion fail to show the propriety of extending discovery in this case beyond these customary parameters. "A vague possibility that loose and sweeping discovery might turn up something suggesting that the [the employment action] was discriminatorily motivated does not show particularized need and likely relevance that would

---

[4] Indeed the overbreadth of Plaintiff's definition of Chemonics in this case is what critically distinguishes the allegedly "identical" requests served by Plaintiff and Defendant (ECF No. 15 at pp. 8-9) – Defendant is seeking the information of one individual (who is the master of his complaint in this case), while Plaintiff is seeking information and documents indiscriminately from all employees of Defendant. Thus, despite similar wording, these are patently different requests.

require moving discovery beyond the natural focus of the inquiry." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-1085 (11th Cir. 1990) (affirming denial of nationwide discovery where RIF was initiated nationally but ultimate layoff decisions were made locally). As such, Plaintiff's requests for company-wide discovery in this matter must be rejected, and Defendant's objections on those grounds should be sustained.

### B. Plaintiff's Motion to Compel Should Be Denied

#### 1. Definition of "Defendant" or "You" (ECF No. 15 at p. 4) and Request for Production Nos. 1-9 (ECF No. 15 at pp. 5-9)

Defendant's objection to the all-encompassing definition of the company is appropriate as such definition purports to require Defendant to conduct searches for information and documents well-beyond the parameters of relevance or proportionality. Although Defendant addresses this objection more specifically in the context of individual requests, Defendant respectfully refers the Court to the points and authorities in Section III.A, *infra*, regarding the propriety of limiting company-discovery to specific custodians.

This definitional distinction is the primary issue in Request Nos. 1-9. Specifically, Plaintiff contends that any objection to these Requests is improper as Plaintiff essentially copied Defendant's requests to Mr. Brown. However, Plaintiff refuses to account for the indisputable differences in scope in asking one individual, who does not (or should not) possess company documents and work product, to produce documents relevant to the lawsuit he has initiated, as compared to asking the company with innumerable custodians and a significant volume of documents related to Plaintiff's seven years of employment but not necessarily his claims in this litigation, the same request (*e.g.,* Request Nos. 4-5). Defendant properly objected to Request Nos. 1-9 to clarify the scope of its search and response, and eliminate the irrelevant documents otherwise encompassed by these requests.

Similarly, Plaintiff seeks personal social media communications from individuals who are not parties to this case and over which Defendant does not have possession, custody or control (*e.g.,* Request No. 6). This again highlights the critical distinctions in permissible scope, relevance and burden of an identical request when addressed to a corporate entity as compared to the individual plaintiff. And Plaintiff requests all documents relevant to his allegations in the Complaint, which Defendant notes include vague and conclusory allegations that create difficulty in ascertaining what is "relevant" to those allegations (Request Nos. 2-3). Consequently, despite the similar nature of the request language, Plaintiff and Defendant are not on equal footing in responding and therefore it is not improper to have different objections.

More importantly, Plaintiff has not and cannot identify a single objection that has resulted in Defendant withholding documents relevant to the claims and defenses in this case. Indeed, Plaintiff's entire request is that "Defendant should be estopped from objecting." (ECF No. 15 at p. 8). Defendant's objections are proper and there is nothing to "compel" with respect to these Requests. Plaintiff's Motion should be denied.

2.  Request for Production No. 12 (ECF No. 15 at pp. 9-10)

Plaintiff asserts in his Motion that Request No. 12 seeks documents that relate to the decision to terminate Plaintiff's employment and why he was selected for termination. As made clear in Defendant's response, it has produced or is producing all documents that support or refer to Plaintiff's termination. Defendant's objections noted the lack of clarity in the drafting of the Request, specifically for documents that "refute" or "rebut" the decision to terminate Plaintiff. Although it is Defendant's position that such request is unintelligible on its face, as it made clear to Plaintiff during the meet and confer sessions, Defendant is producing all documents regarding the termination and is not withholding documents based on these clarifying objections. Similarly, Defendant explained that the objection to the term "relate to" was based on the

differing interpretations of what may "relate to" the decision, as evidenced by the parties' disagreement over the relevant scope of information in this case. However, after the conference of counsel, when Plaintiff made clear that he was seeking documents regarding the termination decision itself, Defendant confirmed that it had produced or would be producing all such documents following the entry of the protective order. Therefore, there is no dispute with respect to the termination documents Plaintiff claims to seek in his motion and it should be denied.

3.     <u>Request for Production No. 15 (ECF No. 15 at p. 10)</u>

In Request No. 15, Plaintiff seeks company-wide discovery without regard to any relationship to his employing unit or the decision maker with respect to his termination. Specifically, Plaintiff seeks all documents identifying all Chemonics' employees, their job titles and dates of birth or age, for five separate periods of time. Defendant objected as, on its face, this Request would purport to require Defendant to provide all personnel documents for all employees who were employed between March 2014 and January 2021. Such request is patently improper.

Plaintiff's Motion suggests, without basis, that such information is easy to produce as it is stored by the company in electronic form. First, the mere availability of information does not make it discoverable. Second, as explained to Plaintiff during the meet and confer process, Defendant does not maintain such rosters of employees including the age and job title of all of its employees. Therefore, Plaintiff's proposal impermissibly seeks to require Defendant to create a document to respond to this request. *See Barnes v. D.C.*, 281 F.R.D. 53, 54 (D.D.C. 2012) ("Parties served with discovery are not generally required to create documents in order to respond to such discovery, since Rule 34 of the Federal Rules of Civil Procedure only requires production of documents already in existence.")(citation omitted). Finally, and most

importantly, the request for company-wide data is improper as outlined with supporting legal authorities in Section III.A., *infra*. Subject to similar objections, Defendant provided a list containing the names and dates of births for all individuals in the LAC employing unit during the relevant period in its Answer to Interrogatory No. 1. Plaintiff's Motion to Compel should be denied with respect to Request No. 15.

### 4. Request for Production No. 16 (ECF No. 15 at pp. 10-11)

Request No. 16 seeks all documents from January 1, 2019 to the present in which Plaintiff's name is mentioned in any capacity by the Human Resources Department or Plaintiff's "Supervisors."[5] This would include a significant number of irrelevant documents, including every email Plaintiff exchanged with his "supervisors" or on which he was copied. Plaintiff again, inexplicably takes the position that if the document is available, it is discoverable, without regard to the lack of relevance to the case. However, that position is inconsistent with Fed. R. Civ. P. 26 and such limitless production of documents only begets more discovery, which is already incredibly expansive in this single-plaintiff disparate treatment case.

Accordingly, Defendant's objections to this Request seek only to limit the communications in scope to those relevant to this litigation – communications relating to Plaintiff's termination. Defendant has already produced relevant communications, will be producing additional documents following the entry of the protective order, and represented to Plaintiff's counsel during the meet and confer that it would affirm that it has reviewed all communications by the relevant Human Resources employees (Jennifer Morrison and Mireille Damiba) and supplement with any further documents referencing Plaintiff's performance or

---

[5] During this time period, Plaintiff's supervisor was Anne Spahr and therefore Defendant also objected to the term of "supervisors" as vague as it is unclear to whom, beyond Ms. Spahr, Plaintiff is referring.

termination. However, Plaintiff's request to compel all communications referencing Plaintiff without regard to the subject matter is unsupportable and must be denied.

5. Request for Production No. 21 (ECF No. 15 at p. 11), Request for Production No. 24 (ECF No. 15 at pp. 11-12) and Request for Production No. 25 (ECF No. 15 at p. 12)

Request No. 21 seeks "[a]ll documents and communications that refer to, relate to or memorialize Defendant's efforts since January 1, 2008 through March 20, 2020 to hire and/or retain workers who are referred to in such efforts as 'old' or 'older' or who are over 60 years old." Conversely, Request No. 24 seeks the same information with respect to "young" or "younger" employees. Relatedly, Request No. 25 seeks all documents and communications using the words "old, older, young or younger" with respect to any employment action.

While Defendant appreciates Plaintiff's narrowing the requests from a 12-year period (as drafted) to January 2017 through March 2020, they are still well beyond the scope of permissible discovery. First, Plaintiff offers no limitations on scope by custodians, regions or business units, position title, or relationship to the Plaintiff. Nor has there been any proffer that such communications were made or exist – this is a pure fishing expedition with no discernible relationship to Plaintiff or his claims.

Beyond that, the proposed searches for the terms "old" and "young" are incredibly overbroad and are not proportional to the needs of the case. Even in Plaintiff's proposed time period, for just two custodians, the word "old" yields 5,863 results (without families) and the word "young" yields 2,419 results (without families). Given that it is extremely unlikely that mere use of the word old or young will relate to alleged hiring or recruiting efforts, Defendant should not be required to search and review documents in response to this request, even in the more limited time frame. Plaintiff's Motion should be denied with respect to Request Nos. 21, 24 and 25.

6.  <u>Request for Production No. 27 (ECF No. 15 at p. 13)</u>

In Request for Production No. 27, Plaintiff seeks company-wide profit and loss statements for 2018 through 2021, a period of four years. Plaintiff's argument ignores the fact that he was terminated due to the budgetary constraints *within the LAC region. See, e.g.,* ECF No. 15-4 at pp. 5-7. Consequently, the profit and loss statements for the company as a whole are not relevant to the claims and defenses in this case. And, following entry of the protective order, Defendant is producing the relevant and detailed 2020 LAC budget information that is relevant to the budgetary constraints leading to Plaintiff's termination. The mere reference to "budgetary constraints" should not entitle Plaintiff to broad financial discovery outside of the decisional unit.

7.  <u>Request for Production No. 30 (ECF No. 15 at p. 13)</u>

During the meet and confer process, Defendant confirmed that it would produce the meeting agenda and the company's minutes for the February 7, 2020 meeting referenced in Plaintiff's Complaint, and will be doing so promptly after the entry of the protective order. Therefore, there is no dispute as to this Request on those grounds. Defendant's only objection to this Request was to the extent it sought personal notes, personal emails or other non-company documents that attendees may have made related to the meeting which are not in possession, custody or control of Defendant. *See, e.g., Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2015 WL 8482256, at *3 (N.D. Cal. Dec. 10, 2015) (citations omitted) (denying motion to compel production of employees' personal email accounts and noting that the moving party had not identified any legal authority under which the employer could force its employees to turn over email from personal accounts). To the extent that Plaintiff is no longer seeking documents from the individual attendees at the meeting, there is no dispute with respect to this Request.

8.  <u>Request for Production No. 31 (ECF No. 15 at pp. 13-14)</u>

In Request No. 31, Plaintiff seeks any meeting minutes where the age of Defendant's employees or workforce, or "age diversity or age inclusion" were discussed. Defendant objected

to the extent that this Request purports to require Defendant to search minutes and records of all meetings in the company (which are not centrally housed in a single-database) to determine if employee age was discussed.  Similar to Request Nos. 21, 24 and 25, there is no allegation or proffer that such a meeting occurred, but rather Plaintiff seems to simply make this request to see what will turn up.  Importantly, this Request is also company-wide and made without reference to Plaintiff, his region or business unit or the individuals involved in his termination.  Defendant expressly stated that it was not withholding documents based on this objection; rather it was providing the limitations of its search.  Plaintiff does not substantively address any of these objections in anyway, stating only if there were "minutes and records where the age of [Defendant's] workforce was discussed," they must be produced.

Moreover, Defendant did not simply refuse to respond.  As set forth in its objection and response, Defendant confirmed with its Diversity & Inclusion team (who would be in charge of such meetings regarding "age diversity" or "age inclusion") that there were no responsive documents.  Defendant should not be compelled to conduct Plaintiff's proposed search, unlimited in scope, and unrelated to the claims at issue.  Plaintiff's Motion should be denied with respect to Request No. 37.

9.     <u>Interrogatory No. 1 (ECF No. 15 at pp. 14-15) and Interrogatory No. 2 (ECF No. 15 at pp. 15-16)</u>

The issues presented regarding the overbroad scope of Interrogatory Nos. 1 and 2 are essentially the same – Plaintiff seeks seven years of company-wide discovery without regard to any relationship to his employing unit or the decision maker with respect to his termination. Specifically, in Interrogatory No. 1, Plaintiff seeks the ages and job titles of all employees in the United States at seven points in time and, in Interrogatory No. 2, seeks identification (including contact information, age or date of birth, job title, date of hire and/or termination, and reason for

termination) for all employees hired or terminated in the United States for a period of seven years.

In response, Defendant provided all requested information for Plaintiff's employing/decisional unit of the LAC under Ms. Spahr for the period of January 2019 until April 2020. *See* Exhibit 15-4 at pp. 16-21.[6] Indeed, although Defendant believes that the discovery could have also properly been limited by position title/supervisor, Defendant did not limit its response on those grounds in an effort to avoid these discovery disputes.

The impropriety of Plaintiff's requests for company-wide discovery is addressed full with supporting legal authorities in Section III.A., *infra*, and Defendant will not reiterate those arguments here.[7] Plaintiff's efforts to compel information beyond that provided in Defendant's answers should be denied.

        10.     <u>Interrogatory No. 3 (ECF No. 15 at pp. 16-17)</u>

Again it is unclear what Plaintiff seeks to compel with respect to Interrogatory No. 3, which seeks communications by any employee of Defendant regarding Plaintiff's job performance, selection for termination and reasons for termination, including communications with Plaintiff. Defendant objected to the Interrogatory as overbroad in scope as Plaintiff was hired in 2014 and terminated in 2020. It is undeniably overbroard and not proportional to the needs of the case to request a narrative of all communications "related" to Plaintiff's "performance" for a period of almost seven years, particularly where Plaintiff's supervisor

---

[6] Defendant notes that Plaintiff violated Fed. R. Civ. P. 5.2 in filing the discovery materials including the month and date of birth of the individuals identified in Answer to Interrogatory Nos. 1 and 2. Defendant contacted Plaintiff upon realizing this information is accessible to the public on Pacer to request Plaintiff have the Court restrict access to the document and/or file a redacted copy.

[7] Notably, Plaintiff's repeated argument that Human Resources can simply hit a button and generate the requested information is unsupported and inaccurate. Nevertheless, Plaintiff's request is properly denied on relevance grounds.

during most of that time period was not a decision maker with respect to his termination, and the termination decision was not based on an extended period of poor performance. Defendant's objections made clear that it was providing all communications from January 2019 until March 2020 regarding Plaintiff's performance. This time period extends 15 months prior to the termination decision and therefore no "termination" communications were withheld. As such, Defendant's response detailing the communications Ms. Spahr, as Plaintiff's supervisor and decision maker, had with Plaintiff and others regarding his performance and the reasons for his termination during the relevant period is proper. Moreover, Defendant has provided and specifically referred to multiple documented communications, including email communications and all performance reviews (without regard to time or supervisor), in its response as permitted by Fed. R. Civ. P. 33(d), and will further supplement as noted following the entry of the protective order.

Thus, Plaintiff's request to compel all communications relating to performance prior to January 2019 (even if limited to supervisors and Human Resources) seeks information that is not relevant to the claims or proportional to the needs of the case, and should be denied.

11. <u>Interrogatory No. 4 (ECF No. 15 at pp. 17-19)</u>

Plaintiff asserts Defendant's objections to Interrogatory No. 4 (requesting identification of individuals with knowledge of "any facts relating to any allegation or claim made in the Complaint" and "all relevant facts" possessed by each) are inappropriate as Defendant posed the same interrogatory to Plaintiff. Defendant's objections made clear that the Interrogatory was only vague to the extent that the allegations in the Complaint were conclusory or vague, and only Plaintiff has knowledge of any alleged information supporting those allegations. In other words, Plaintiff and Defendant are in fundamentally different positions in addressing this question as

Plaintiff is the person who has brought a claim and thus understands the basis of that claim, which is wholly unclear from his bare-bones Complaint.

Defendant's only other objection was to note that it would not provide "all relevant facts" but a summary of relevant facts given the burden of listing in narrative form all facts which these witnesses may possess that could relate to this case. Defendant then provided a fulsome response identifying the individuals with knowledge, and a summary of that knowledge. It is unclear what precisely Plaintiff seeks to compel in this response, but Defendant submits that there is no "dispute" here and Plaintiff's Motion must be denied.

12.    Interrogatory No. 5 (ECF No. 15 at p. 19)

Plaintiff asserts Defendant's objections to Interrogatory No. 5 (requesting identification of every person with whom "Chemonics" has had communications and taken statements) are inappropriate as Defendant posed the same interrogatory to Plaintiff. Defendant's objections were offered to clarify Defendant's interpretation of the Interrogatory based on Plaintiff's definitions. Nonetheless, Defendant affirmed that it had communications with the EEOC and would produce a copy of the FOIA response containing those communications. It is thus unclear what Plaintiff seeks to compel.

Plaintiff has since taken the position that this Interrogatory should have included internal communications between Chemonics' employees; however, on its face, the Interrogatory requests information regarding communications "you" (Chemonics) had with any other person, and the reasonable interpretation is that any other person is a third party. This is particularly true given that Plaintiff's Interrogatory No. 3 expressly requests communications "by any employee of Defendant" regarding Plaintiff's performance and termination, and Defendant detailed communications between its employees in its response. There is no "dispute" here and Plaintiff's Motion must be denied.

13. Interrogatory No. 6 (ECF No. 15 at pp. 19-20)

Plaintiff asserts Defendant's objections to Interrogatory No. 6 (requesting identification of any witnesses Defendant has asked to testify at trial) are inappropriate as Defendant posed the same interrogatory to Plaintiff. Defendant's objections were offered to clarify Defendant's interpretation of the Interrogatory based on Plaintiff's definitions and to note that it is premature to require a complete list of witnesses at this stage of the litigation. Nonetheless, Defendant affirmed that it has not determined the witnesses it will present at trial and has not asked anyone to testify at trial at this time. There is no "dispute" here and Plaintiff's Motion must be denied.

14. Interrogatory No. 7 (ECF No. 15 at p. 20)

Plaintiff asserts Defendant's objections to Interrogatory No. 7 (requesting identification of any admissions or declaration against interest) are inappropriate as Defendant posed the same interrogatory to Plaintiff. Defendant's objections simply noted that a complete response to the Interrogatory is premature as the parties had only recently commenced discovery and further that it reserved the right to introduce additional evidence under Fed. R. Evid. 801, which governs the admissibility of an opposing party's statement without regarding to whether it is deemed "against interest." Defendant expressly stated that it "is not withholding information based on these objections" and "is not aware of any admission or declaration against interest at this time," but reserved the right to supplement the response as discovery progresses. There is no "dispute" here and Plaintiff's Motion must be denied.

## V. CONCLUSION

In consideration of the points and authorities herein, Defendant respectfully requests that the Court (1) enter the proposed protective order attached hereto as Exhibit A, and (2) deny Plaintiff's Motion to Compel in its entirety.

DATED:  July 23, 2021                    Respectfully submitted,

                                         SEYFARTH SHAW LLP


By:  */s/  Christine M. Costantino*
     Raymond Baldwin, DC Bar 461514
     rbaldwin@seyfarth.com
     Christine Costantino, DC Bar 98463
     ccostantino@seyfarth.com
     SEYFARTH SHAW LLP
     975 F Street, N.W.,
     Washington, DC  20004
     Telephone:    (202) 463-2400
     Facsimile:    (202) 828-5393

     *Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL I. BROWN | ) |
| 302 Old Branchville Road | ) |
| Ridgefield, CT 06877 | ) |
| | ) |
|     Plaintiff, | )   Case No. 1:20-cv-03661 KBJ |
| | ) |
| v. | ) |
| | ) |
| CHEMONICS INTERNATIONAL, INC. | ) |
| 1717 H Street, NW | ) |
| Washington DC 20006, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 23, 2021, a true and correct copy of the foregoing was

filed with the Clerk of the Court using the CM/ECF system served on Plaintiff's counsel:

> Larry Postol
> Postol Law Firm, P.C.
> McLean, Virginia 22101


       */s/ Christine Costantino*
Christine Costantino, DC Bar 984639
ccostantino@seyfarth.com
Counsel for Defendant