**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL I. BROWN,<br><br>  Plaintiff,<br><br>v.<br><br>CHEMONICS INTERNATIONAL, INC.,<br><br>  Defendant. | Case No. 1:20-cv-3661-JMC-RMM |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael I. Brown brought this suit against his former employer, Chemonics International ("Chemonics"), alleging that Chemonics terminated him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"). The parties began discovery in earnest but have reached an impasse. Pending now are Mr. Brown's Motion to Compel Discovery, Chemonic's competing Motion for Protective Order, and a more recent motion by Mr. Brown for a hearing on these matters. Having considered the relevant law and the parties' pleadings and briefs,[1] the Court DENIES Mr. Brown's Motion to Compel and GRANTS Chemonic's Motion for Protective Order, for the reasons that follow, and DENIES Mr. Brown's Motion for Hearing as moot.

---

[1] The relevant pleadings and briefs include the Complaint, ECF No. 1 ("Compl."); the parties' Joint Motion for Extension of Time to Complete Discovery and Status Report, ECF No. 14 ("Jt. Rep."); Mr. Brown's Motion to Compel Discovery Responses, ECF No. 15 ("Mot. to Compel") and the attached exhibits; Chemonic's Opposition to the Motion to Compel and Motion for Entry of a Protective Order, ECF No. 18 ("Mot. for Prot. Order") and the attached exhibits; Mr. Brown's Reply in Support of his Motion to Compel and Opposition to the Motion for Protective Order, ECF No. 20 ("Pl. Reply"); Chemonic's Reply to Mr. Brown's Opposition, ECF No. 22 ("Def. Reply"); Mr. Brown's Motion for Hearing on the Motion to Compel, ECF No. 27 ("Hearing Mot."); and Chemonic's Response to the Hearing Mot., ECF No. 28. Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

## BACKGROUND

Chemonics is an international development corporation. *See* Mot. for Prot. Order at *4. The company hired Mr. Brown in March 2014, when he was sixty-two years old, to work as a Manager and Home Office Director. *See id.*; Compl. ¶¶ 6, 8. Mr. Brown was subsequently named the Environment and Natural Resources Practice Director within the company's Latin American and Caribbean business unit (the "LAC Unit"). *See* Mot. for Prot. Order at *4; Compl. ¶ 6. The LAC Unit is one of a dozen regional business units within Chemonics, each of which is headed by a Senior Vice President or "SVP." *See* Mot. for Prot. Order at *4. The SVP of the LAC Unit is Anne Spahr. *See id*.

In February 2020, nearly five years after he was hired, Mr. Brown—now sixty-seven—learned that his position was to be eliminated. *See* Compl. ¶ 7. Chemonics had faced a significant budget shortfall in 2019. *See* Mot. for Prot. Order at *4. Mr. Brown says the company's Executive Vice President assured employees that "practice staff would not be terminated due to budget constraints," yet he was out of his job by March. Compl. ¶¶ 6–7. Mr. Brown was "the only home office director of a practice terminated." *Id*. ¶ 9. He was also "one of the very oldest home office director[s]" then employed by Chemonics. *Id*. Mr. Brown reasons that Chemonics "had and has a culture of ageism" that resulted in "a pattern and practice of discriminating against older workers" so that "younger employees" could step into their shoes. *Id.* ¶¶ 10–12. Mr. Brown points out that among the entire staff of Chemonics home office directors—a group of nine to eleven[2] employees—all were younger than Mr. Brown, and all survived the 2019–20 Chemonics terminations. *See id.* ¶ 9. Mr. Brown's own job responsibilities were assigned to a "former associate" in the Environment and Natural Resources

---

[2] Mr. Brown estimates that, at the time of his termination, Chemonics employed nine or ten home office directors *other than* himself. *See* Compl. ¶ 9.

2

Practice who is "at least 25 years" younger than Mr. Brown, and who is assisted by a team of other directors "all of whom are . . . at least 10 years younger" than Mr. Brown, "with the possible exception of one." *Id.* ¶ 10.  Mr. Brown thus claims that Chemonics terminated him because of his age in violation of the ADEA, which prohibits the "discharge of any individual" who is "at least 40 years" of age "because of such individual's age." *Id.* ¶ 14; 29 U.S.C. §§ 623(a)(1), 631(a).

Chemonics has offered a different explanation for Mr. Brown's termination.  Rather than initiate a company-wide reduction-in-force program following the 2019 budget shortfall, the company says it assigned each regional unit its own budget and directed the unit's SVP to allocate funds within their respective region.  *See* Mot. for Prot. Order at *4.  As SVP of the LAC Unit, Ms. Spahr "saw limited opportunities in Mr. Brown's area" and "decided that the LAC region's budget could no longer support a Director[-]level position for Environment and Natural Resources."  *Id*.  So Ms. Spahr eliminated Mr. Brown's position, and informed Mr. Brown that "his termination would be effective on March 20, 2020, unless [he] successfully obtained another position within the company."  Mot. to Compel at 17.  Mr. Brown did not obtain another position at Chemonics and was fired.  *See* Compl. ¶¶ 9, 15.  He is now working as a self-employed consultant through his international development firm, Satya International ("Satya"), which Chemonics sees as a potential market competitor.  *See* Mot. for Prot. Order at *7–*8; Pl. Reply at 3.

Mr. Brown initially filed a charge of age discrimination with the Equal Employment Opportunity Commission.  *See* Compl. ¶ 5.  The Commission issued a right to sue letter in December 2020.  *See id*.  Mr. Brown then filed this civil suit.  *See generally id*.

3

The parties entered discovery the following February. Mr. Brown served Chemonics with his first requests for production on February 10, 2021, asking for twenty-seven categories of documents. *See* ECF No. 15-1. Chemonics responded thirty-three days later, agreeing to produce some documents and raising several objections. *See* ECF No. 15-3. Mr. Brown served Chemonics with additional requests for production and three interrogatories on March 9, 2021. *See* ECF No. 15-2. A third group of document requests and a second set of interrogatories were served sometime thereafter, bringing the total document requests to thirty-four and the interrogatories to seven. *See* ECF No. 15-4.[3] Chemonics responded to the additional discovery requests on April 19, 2021—forty-one days after being served with the March 9 requests—again agreeing to produce some documents, raising numerous objections, and answering some of Mr. Brown's interrogatories subject to limitations and additional objections. *See id*.

By mid-summer the parties had reached an impasse. *See* June 30, 2021 Min. Order. The parties described their discovery dispute as involving four main issues: First, Chemonics had refused to produce some of the documents Mr. Brown requested without a protective order, but the parties had been unable to settle on mutually acceptable language. *See* Jt. Rep. at 1, 2–3. Second, Chemonics had objected to discovery requests that Mr. Brown characterized as "identical, or essentially identical" to discovery requests the company had sent to Mr. Brown and to which Mr. Brown had already responded. *See id.* at 1–2. Third, Chemonics believed it could limit the scope of discovery to the LAC Unit, while Mr. Brown insisted on obtaining companywide discovery, because "while housed in one group, [he] did work for other groups throughout the [c]ompany and . . . alleged a pattern and practice of age discrimination" at the

---

[3] The second set of interrogatories was not attached as an exhibit to Mr. Brown's Motion to Compel. Replacement exhibits to Chemonics's Response to the Second Discovery Requests were docketed at ECF No. 17.

company as a whole. *Id.* at 2. Fourth, Chemonics had raised burdensomeness objections to certain discovery requests that Mr. Brown felt were central to his case. *See id.* Mr. Brown objected that Chemonics had not offered "proof" to "establish what the burden is" and offered his own explanations as to why he thought the requests could "easily be done." *Id.*

Under the Court's General Order and Guidelines, the parties were to participate in a telephonic conference with the Court before docketing any discovery-related motions. *See* Order pt. 4(b), ECF No. 10. Mr. Brown did not wait for a conference before filing his Motion to Compel. Chemonics timely responded with an omnibus Opposition and Motion for Protective Order. Mr. Brown has since reached out to Chambers on several occasions to inquire about the status of the Court's resolution of the discovery disputes. In February 2022, he filed a Motion for Hearing noting that discovery had been "at a stand[-]still." Hearing Mot. at 3. Chemonics counters that a hearing is not necessary to resolve the parties' substantive discovery disputes. *See* Response to Hearing Mot., ECF No. 28.

## LEGAL STANDARDS

In a civil suit, discovery is permitted into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery may be obtained from the opposing party through written interrogatories under Rule 33 or requests to produce documents under Rule 34, among other discovery tools. The responding party must answer the interrogatories or provide responsive documents, or specifically state their objections to the request, within thirty days. *See* Fed. R. Civ. P. 33(b), 34(b)(2).

If the party seeking discovery believes that an answer or document was improperly withheld or is evasive or incomplete, the party "may—after first attempting to resolve the issue by conferring with the other party—file a motion to compel." *Barnes v. District of Columbia*,

5

289 F.R.D. 1, 5 (D.D.C. 2012) (*Barnes II*); *see also* Fed. R. Civ. P. 37(a). The moving party has the burden of proving that the discovery requested is relevant and that the opposing party's response is inadequate or incomplete. *See Alexander v. F.B.I.*, 193 F.R.D. 1, 3 (D.D.C. 2000) ("*Alexander II*"). The responding party then "bears the burden of showing why discovery should not be permitted." *Id.* (internal quotation omitted). "Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel." *Barnes II*, 289 F.R.D at 5–6 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–52 (1978)). The decision rests in the trial court's sound discretion. *See id.*

The party from whom discovery is sought may also seek a protective order to guard against "annoyance, embarrassment, oppression, or undue burden or expense" occasioned by the other party's discovery requests. Fed. R. Civ. P. 26(c)(1). The protective order may forbid the disclosure of discovery, bar inquiry into certain matters, or require that "confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Id*. The party seeking a protective order "bears the burden of making the showing of good cause" contemplated by Rule 26(c). *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998) ("*Alexander I*"). Courts considering such motions generally weigh "specific evidence of the harm that would result" to the movant absent a protective order against "plaintiffs' legitimate and important interests in trial preparation." *Blake v. Architect of Capitol*, No. 19-cv-3409-TSC-RMM, 2021 WL 5990949, *2 (D.D.C. Sept. 22, 2021) (quoting *Alexander I*, 186 F.R.D. at 75). Trial courts have "broad discretion to issue and set the terms of a protective order." *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

6

## DISCUSSION

### I. Chemonics's Days-Late Responses are Not Prejudicial

Mr. Brown opens his motion to compel by pointing to Chemonics's procedurally late responses and objections to his discovery requests. *See* Mot. to Compel at 4. Under the Federal Rules, the party responding to interrogatories or requests for production must serve its response, including any objections, within thirty days. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). "In general, untimely objections to discovery requests are waived." *Caudle v. D.C.*, 263 F.R.D. 29, 33 (D.D.C. 2009). Trial courts may "reject a waiver where the opposing party will not suffer prejudice and the delinquent party has not demonstrated a pattern of misconduct." *Id.*

No prejudice to Mr. Brown is apparent here, where Mr. Brown received Chemonics's responses and objections three and eleven days late, respectively. Nor does Chemonics appear to be engaged in a "pattern of misconduct." The Court will therefore consider the company's objections to Mr. Brown's discovery requests on their merits.

### II. Good Cause Supports Issuing the Proposed Protective Order

The parties' first substantive dispute over Mr. Brown's discovery requests is whether a Rule 26(c) protective order should govern discovery in this suit, and if so, in what form. Mr. Brown initially maintained that a protective order was not necessary in this case. *See* Mot. for Prot. Order at *8. After Chemonics refused to provide certain discovery absent a protective order, the parties exchanged several draft orders, but ultimately could not reach consensus on an acceptable proposal to present to the Court. *See id.*

The proposal now before the Court was provided by Chemonics and is based on a template from the District of Maryland. *See* Mot. for Prot. Order at *8; *see also* ECF No. 18-3 (the "Proposed Prot. Order"). The proposal permits either party to designate discovery material as "confidential" when the party "in good faith believes [the discovery] contains sensitive

personal information, trade secrets[,] or other confidential research, development, or commercial information which is in fact confidential." Proposed Prot. Order pt. 1(a).  Parties may make confidentiality designations only after "reasonable inquiry to determine whether [the discovery] qualifies." *Id*.  Information designated confidential may not be used "for any purposes whatsoever other than preparing for and conducting the litigation." *Id.* pt. 1(c).  If the other party disagrees with a confidentiality designation, the challenging party must file a motion with the court, although the "burden of proving the confidentiality of designated information remains with the party asserting such confidentiality." *Id.* pt. 4.  Mr. Brown objects to entry of this order because he wants "the burden to file a motion over whether a document is confidential and thus entitled to [protection]" to rest with Chemonics, not with him.  Pl. Reply at 3.

There is good cause to issue the Proposed Protective Order in this case.  Chemonics has presented specific evidence that the company could be harmed if Mr. Brown uses commercial information discovered in this matter to compete with Chemonics in the international development market through his competitor company Satya.  *See* Mot. for Prot. Order at *7–*8. Even if Mr. Brown poses no serious threat to Chemonics's bottom-line business prospects, as Mr. Brown insists, *see* Pl. Reply at 3, the Federal Rules specifically contemplate issuing protective orders to shield "commercial information" disclosed in discovery.  *See* Fed. R. Civ. P. 26(c)(1)(G).  The proposed order also balances the potential harm to Chemonics against Mr. Brown's "legitimate and important interests in trial preparation," *see Blake*, 2021 WL 5990949, at *2; *Alexander I*, 186 F.R.D. at 75, by permitting Mr. Brown to access the discovery while limiting his use of information "for any purposes whatsoever other than preparing for and conducting [this] litigation." Proposed Prot. Order pt. 1(c).  And the structure of the order, which reserves disputes about a document's status as protected until after the producing party

makes its designations, rather than making designation contingent on the receiving party's agreement, makes sense for this case and is consistent with other protective orders routinely issued by this Court. *See, e.g.*, *Doe v. District of Columbia*, 248 F. Supp. 3d 186, 190–91 (D.D.C. 2017) (describing a similar order); *Sourgoutsis v. United States Capitol Police*, No. 16-cv-1096-KBJ-RMM, 2018 WL 4680206, at *2, *4 (D.D.C. Sept. 29, 2018) (same); *see also ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, No. 16-cv-54-EGS-DAR, 2019 WL 8755131, at *6–*10 (D.D.C. Nov. 25, 2019) (assessing the merits of a confidentiality designation asserted under a similar umbrella protective order).

The Court will therefore grant Chemonics's Motion for Protective Order,[4] and, with a protective order in place, deny as moot the portions of Mr. Brown's Motion to Compel premised on Chemonics's refusal to produce discovery "without a protective order." Mot. to Compel at 2; *see also id.* at 9, 16–27 (reproducing responses to Production Request No. 12 and Interrogatory No. 3).

## III. Estoppel Does Not Apply

The next issue raised by Mr. Brown is that Chemonics has refused to respond to discovery requests "identical, or essentially identical" to requests served on Mr. Brown that Mr. Brown has already answered. Mot. to Compel at 2, 8–9, 18–20. Mr. Brown reasons that having sent the same discovery requests to him and having raised no objection to his responses, Chemonics "should be estopped from objecting" to Mr. Brown's requests in return. *Id.* at 8.

---

[4] Chemonics also insists that its protective order would "expedite the flow of discovery" in this case. Mot. for Prot. Order at *10 (citing *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018)). Although the Court has little doubt that expedited discovery is a laudable aim for discovery in this and other civil cases, *Johnson* interprets Federal Rule of Criminal Procedure 16(d), which governs protective orders in criminal cases. *See* 314 F. Supp. 3d at 251. As the balancing test of Federal Rule of Civil Procedure 26(c) already provides sufficient reason to issue a protective order here, the Court declines to apply *Johnson* to this case or opine on whether the "good cause" standards under the Criminal and Civil Rules are equivalent.

The Court is not convinced. The federal civil discovery rules are not a quid pro quo system. Discovery is generally permitted into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The relevant inquiry, then, is whether discovery is "relevant" and "proportional," not what the other side previously requested, received, or agreed to provide. Mr. Brown points to no authority applying principles of estoppel to a situation such as this. And the typical factors that inform equitable or "judicial" estoppel, which Mr. Brown appears to invoke, are not present in this dispute. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (discussing the doctrine).

## IV.   Company-Wide Discovery Is Not Warranted

Underlying Mr. Brown's estoppel theory is a broader dispute regarding the proper scope of discovery in this matter. Chemonics has objected to several discovery requests on the basis that they are irrelevant, overbroad, or unduly burdensome, as Mr. Brown requests information from the company as a whole rather than from the LAC Unit in which Mr. Brown was organizationally housed. *See* Mot. for Prot. Order at *6, *13. Mr. Brown insists that he should have access to companywide discovery for two principal reasons. *See* Pl. Reply at 1–2, 4.

### A.   *Companywide Financial Documents (Request for Production No. 27)*

One of Mr. Brown's arguments for compelling companywide discovery relates to the scope of his work at Chemonics. *See* Pl. Reply at 2. Mr. Brown asserts that his responsibilities were not confined to the LAC Unit because "in fact Plaintiff worked primarily for other business units" to create "outside" opportunities and support "the company as a whole." *Id*. He was "housed in the [LAC Unit] arbitrarily," he says, and his work had "companywide implications." *Id*. Mr. Brown thus theorizes that "to effectuate his layoff," Chemonics must have considered companywide budgetary shortfalls, particularly because "the budget shortfall that is being blamed for Plaintiff's layoff was companywide." *Id*. "[I]f the decision to terminate the Plaintiff

10

was based on his worth to the company," he reasons, "then it is patently clear that discovery is needed beyond the business unit he was housed in, since his work and benefit was outside that unit." *Id*.

The problem is that Mr. Brown has misstated—or misunderstood—Chemonics's theory of the case, and so misjudged the relevance of his companywide financial discovery request. Chemonics has not suggested it eliminated Mr. Brown's position "based on his worth to the company" or to shore up the companywide budget shortfall in 2019. Rather, Chemonics insists it eliminated Mr. Brown's position after financial strains in 2019 convinced company leadership to assign independent budgets to each regional unit, and the LAC Unit in which Mr. Brown was housed determined it "could no longer support a Director[-]level position for Environment and Natural Resources." Mot. for Prot. Order at *4. The termination decision was thus LAC Unit-specific, based on the LAC Unit's independent regional budget. Mr. Brown will therefore find no "strong evidence of pretext" if the LAC Unit SVP "ignored the benefit of Plaintiff's work for other business units," as he claims. Pl. Reply at 4. For one, the LAC Unit could have been in the red even while the overall Chemonics budget was in the black. Additionally, the information Mr. Brown has already uncovered reveals that Ms. Spahr was quite aware of Mr. Brown's benefit to other business units at Chemonics—she attempted to convince other units to "purchase" Mr. Brown's time in order to "ease the LAC budget constraints" and more accurately capture his extra-regional benefits to the company. Mot. to Compel at 16. And Chemonics has agreed to produce the 2020 LAC budget information now that a protective order is in place, *see* Mot. for Prot. Order at *21, so Mr. Brown can test whether the LAC Unit budgetary constraints are a pretext for his termination.

Companywide financial information, then, is irrelevant to Mr. Brown's ADEA claim. Complete financial information for Chemonics will show neither that Mr. Brown was terminated "because of his age" nor that Chemonics is lying about eliminating his position due to shortfalls in the LAC Unit's budget.

### B. *Companywide Age-Based Hiring and Firing Decisions (Requests for Production Nos. 21, 24–25, and 31 and Interrogatories 1 and 2)*

The other overarching dispute over the scope of proper discovery in this case relates to Mr. Brown's allegations of a companywide "pattern and practice of age discrimination." Pl. Reply at 1; *see also* Compl. ¶¶ 8–12. Unlike companywide financial documents, discovery related to Chemonics's hiring and firing decisions based on age—whether to attract and retain older workers or to push them out—is at least marginally relevant to Mr. Brown's ADEA claim.

Mr. Brown's requests related to the age of the company's workforce and age-based hiring and firing decisions are nevertheless out of proportion to the needs of this case. Six requests fall into this category. In document requests 21, 24, and 25, Mr. Brown seeks "documents and communications that refer to, relate to or memorialize" the company's efforts to "hire," "retain," or "accomplish . . . the hiring of" employees who are "old," "older," "young," or "younger." Mot. to Compel at 11–12. In document request 31, Mr. Brown sought "minutes or records of meetings [Chemonics held] from January 1, 2018 through April 30, 2020 [at which] the age of [Chemonics] employees, or [the Chemonics] workforce, or age diversity or age inclusion was discussed." *Id.* at 13. And in interrogatories 1 and 2, Mr. Brown sought seven years' data about every employee at the company, including their title and age, as well as hiring and termination decisions for eight distinct periods in time, each identifying employees by name, title, and age. *See id.* at 14–15.

Chemonics objected to these requests as overly broad, unduly burdensome, and disproportionate to the needs of this case. *See id.* at 11–15. The company points out that a search for the terms "old" and "young" in documents from just two Chemonics custodians returned over 8,000 hits. *See* Mot. for Prot. Order at *20. Document requests 21, 24, and 25 are not limited by custodian, so companywide returns on Mr. Brown's selected keywords will almost certainly be higher. *See id.* Similarly, Chemonics objects to searching minutes and records for "all meetings in the company (which are not housed in a single[ ]database) to determine if employee age was discussed." *Id.* at *22. In a company of approximately 5,000 employees, *see id.* at *4, searching every record detailing every meeting held over the course of more than two years to determine whether the meeting included age-based hiring or firing discussions would require tremendous energy and resources. Chemonics also objected to identifying the name, age, and title of every person employed, hired, or terminated across every regional unit of the company "in the absence of any evidence that there were . . . hiring and firing practices and procedures applicable to all the employing units," and for a period of seven years. Mot. to Compel at 14, 15 (citing *Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010)).

Mr. Brown responds only superficially to these objections. He maintains that Chemonics has not provided "declarations or evidence of any burden." Pl. Reply at 4. If Mr. Brown is insisting here on a formal declaration under penalty of perjury, or evidence in a form that would be admissible under the Rules of Evidence, his argument is misplaced. Burdensomeness objections are routinely judged on party proffers in briefs and at motions hearings, and Chemonics has spelled out several in its opposition papers. *See* Mot. for Prot. Order at *20, *22.

Mr. Brown also suggests that discovery "is now usually made based on computer searches, [so] it is no more burdensome to do the search of the whole company[] th[a]n for a

single business unit." Pl. Reply at 4; *see also* Mot. to Compel at 14–15 (arguing that information responsive to Interrogatories 1 and 2 is "undoubtedly" kept "in electronic form"). Documents and information kept in electronic form must still be reviewed by custodians for responsiveness, relevance, privilege, and other considerations. Not every document containing the word "young" or "old," for example, would be responsive to Mr. Brown's document requests: He asks only for documents containing those keywords that "refer to, relate to or memorialize" hiring and firing decisions. *See* Mot. to Compel at 11–12. And although information about every employee working for, hired by, or terminated from Chemonics surely exists in the company's records, that information must be processed, compiled, double checked, and combed through to protect sensitive and confidential data. Mr. Brown cannot simply dismiss the burdens his requests impose on Chemonics, and he has not explained why those burdens are proportional to the needs of this case.

Additional factors weigh against the proportionality of Mr. Brown's companywide employment data requests, as well. Among them, Chemonics did not simply refuse to respond to Mr. Brown's requests. The company produced lists of the individuals employed, hired, and fired within the LAC Unit between January 2019 and April 2020. *See* Mot. to Compel at 14–15; ECF No. 17 (amended exhibits). And Chemonics offered to narrow the meeting records request to meeting records from its Diversity and Inclusion team, which "would be in charge of . . . meetings regarding 'age diversity' or 'age inclusion.'" Mot. for Prot. Order at *22. Chemonics conferred with that team and informed Mr. Brown that the company has "no responsive documents" subject to the limitation. *Id*. Mr. Brown has not explained why these narrowed responses are inadequate or will hamper his preparation for the trial of this case.

Similarly, as originally drafted, requests 21, 24, and 25 targeted not just hiring decisions about "younger" and "older" candidates, but also efforts aimed at employees "over 60" and "under 40 years old." Mot. to Compel at 11–12. Mr. Brown agreed to drop the age-specific requests in his Motion to Compel. *See id.* He also agreed in his motion to "narrow the time frame" of the requests from twelve to three years. *See id.* Mr. Brown has not explained why these concessions were made in the motion he lodged with the Court, rather than during the meet and confer process required by Federal Rule of Civil Procedure 37(a)(1), Local Civil Rule 7(m), and the Court's General Order and Guidelines pt. 4(b), ECF No. 10. "[T]he prior efforts of the parties to resolve" a discovery dispute may be considered when a court considers whether to grant a motion to compel. *Barnes II*, 289 F.R.D. at 5. Mr. Brown's apparent lack of effort suggests the parties are capable of identifying and settling on more proportional discovery requests without the aid of the Court, so the Court will leave it to the parties to identify those requests moving forward.

## V. Chemonics's Remaining Objections Are Sustained

The remaining discovery responses Mr. Brown seeks to compel can be addressed in a more summary fashion. Overall, Mr. Brown's requests are phrased in exceptionally broad terms, and Chemonics has cautiously raised objections to portions of the requests that appear to seek documents or information outside the scope of discovery under Rule 26(b). Mr. Brown has not explained why the company's responses are inadequate, or why broader interpretations of his requests will uncover relevant information beyond what Chemonics agreed to provide. Document Requests 4 and 16 fall into this category.

In other instances, Mr. Brown has made sweeping requests that appear to target relevant discovery, as that concept is broadly construed. But the full scope of the discovery he seeks will be far more burdensome to uncover than it will be useful to litigating or adjudicating this case.

15

Document Request 5, for example, can be reasonably interpreted to seek "informal email communications that refer or relate to or otherwise reflect Plaintiff's performance for the entire duration of his employment." Mot. to Compel at 6. Hypothetically, a casual email from Ms. Spahr commending Mr. Brown on a job well done would be responsive to this request, and it is probably relevant to Mr. Brown's case, as it might show that Ms. Spahr would not have been inclined to terminate Mr. Brown but for some non-performance-based characteristic such as age. But the resources necessary to sift through thousands of emails and other documents to identify each one that "refers," "relates to," or "otherwise reflects" Mr. Brown's performance at Chemonics far outweighs the discovery's likely benefit to either party or this Court. The Court will not compel Chemonics to respond with *every possible* responsive document in an overbroad request such as this, particularly because the company agreed to produce a more limited set of documents—formal performance reviews and performance improvement plans—better fitted to the needs of this case. *See id*.

Other of Mr. Brown's requests appear to seek documents not under Chemonics's control, or which do not exist. Document Requests 6 and 8, for example, seek among other things "communications . . . by or between Plaintiff . . . and Plaintiff's . . . friends, family, business associates, or anyone . . . formerly employed by Chemonics," and "diaries [and] journals . . . describing, relating to, referring to or touching upon Plaintiff's employment at Chemonics." Mot. to Compel at 6–7. Rule 34 permits Mr. Brown to request only documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Chemonics offered limiting objections to clarify that its responses were based on the company's own documents and records. *See* Mot. to Compel 6–7. The Court will not compel the company to do more.

Document Request 15, by contrast, seems to request documents that Chemonics says do not exist. Mr. Brown requested documents "which identify the employees of Chemonics, their job titles and their ages or date of birth" as of five discrete dates between March 2014 and January 2021. Mot. to Compel at 10. He says responding to the request should not be hard because "undoubtedly this information is ke[p]t by the Defendant's HR Department in electronic form." *Id*. That reasoning reveals that Mr. Brown has confused *information* about his former colleagues' ages and titles—information he requested in Interrogatories 1 and 2, addressed above—with *documents reflecting* information about his former colleagues' ages and titles as of specific dates. Parties served with Rule 34 document requests "are generally not required to create documents in order to respond," as the Rule only requires production of documents "already in existence." *Barnes v. District of Columbia*, 281 F.R.D. 53, 54 (D.D.C. 2012) (*Barnes I*).

These examples illustrate the sweeping language used in Mr. Brown's requests, and exemplify why the Court will not compel Chemonics to respond more thoroughly than it has to date. The Court will not condone or encourage the "inordinate expense involved in overbroad and far-ranging discovery requests." *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983).

## VI. Requests for Which There Is Nothing to Compel

A concluding note is warranted with respect to several discovery requests Mr. Brown included in his Motion to Compel to which Chemonics has already responded to the fullest extent required by the Rules. Mr. Brown wonders "if all [responsive] information was produced, why make the objection?" Pl. Reply at 5. What Mr. Brown or his counsel hopes to convey by this witticism is unclear. Presumably, Chemonics raised objections to preserve them, because as

Mr. Brown's counsel knows, "untimely objections to discovery requests are [generally] waived." Mot. to Compel at 3 (quoting *Caudle*, 263 F.R.D. at 33).

Mr. Brown also suggests that the "only way to be sure that all information and documents have been and in the future will be produced, is to overrule the objections." Pl. Reply at 5. He asks, "what is the harm of overruling the objection and compelling discovery, if all information and documents have been produced?" *Id*. That is not how motions to compel work. The party seeking to compel discovery has the burden of proving that the discovery requested is relevant and that the opposing party's response is inadequate or incomplete. *See Alexander II*, 193 F.R.D. at 3. Mr. Brown has generally not met that burden, and where he has, Chemonics has adequately demonstrated that the requests are nonetheless disproportional to the needs of this case.

## CONCLUSION

For these reasons, the Court **GRANTS** Chemonics's Motion for Protective Order and **ADOPTS** the order attached to that motion as Exhibit A, ECF No. 18-3. The company is **ORDERED** to provide discovery it withheld pending entry of a protective order within fourteen days. Mr. Brown's Motion to Compel is **DENIED**. The Motion for Hearing is further **DENIED** as moot.

**SO ORDERED** this March 22, 2022.

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE